**PLAINTIFF'S
EXHIBIT**

tabbies

1

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

AZRIEL WEAVER                            :
4711 Fowler Street                       :     CIVIL ACTION
Philadelphia, PA 19127                   :
                                         :     NO. 09-5592
          Plaintiff,                     :
     v.                                  :
                                         :
CONRAIL, INC.                            :
2001 Market Street                       :
Philadelphia, PA 19101                   :
     -and-                               :
CONSOLIDATED RAIL CORPORATION, :
d/b/a CONRAIL                            :
1717 Arch Street                         :
Philadelphia, PA 19103                   :
     -and-                               :
CONRAIL SHARED ASSETS                    :
1717 Arch Street                         :
Philadelphia, PA 19103                   :
     -and-                               :
CSX CORPORATION                          :
500 Water Street, 15th floor             :
Jacksonville, FL 32202                   :
     -and-                               :
CSX TRANSPORTATION, INC.                 :
500 Water Street, 15th floor             :
Jacksonville, FL 32202                   :
     -and-                               :
NORFOLK SOUTHERN CORPORATION :
1515 Market Street, Ste. 1210            :
Philadelphia, PA 19103                   :
     -and-                               :
NORFOLK SOUTHERN                         :
RAILWAY COMPANY                          :
1515 Market Street, Ste. 1210            :
Philadelphia, PA 19103                   :
                                         :
          Defendants.                    :

## AMENDED CIVIL ACTION COMPLAINT

Plaintiff, Azriel Weaver, by and through her attorneys, says by way of Complaint against Defendants, as follows:

### I. PARTIES

1.    Plaintiff, Azriel Weaver, is an adult individual with a principle domicile located at 4711 Fowler Street, Philadelphia, PA 19127.

2.    Defendant, Conrail, Inc. is a corporation, organized and existing under and by virtue of the laws of the Commonwealth of Pennsylvania, with a primary place of business and a registered office address located at 2001 Market Street, Philadelphia, PA 19101.

3.    At all times material hereto, Defendant, Conrail, Inc., acted by and through their duly authorized agents, ostensible agents, employees, workmen, and servants, all of whom were working in furtherance of the business interests of the Defendant herein, Conrail, Inc.

4.    Defendant, Conrail, Inc., is vicariously liable for the negligent acts and/or omissions of it's duly authorized agents, ostensible agents, employees, workmen, and servants, all of whom were working in furtherance of the business interests of the Defendant herein, Conrail, Inc.

5.    Defendant, Consolidated Rail Corporation, d/b/a Conrail, is a corporation, organized and existing under and by virtue of the laws of the Commonwealth of Pennsylvania, with a primary place of business and a registered office address located at 2001 Market Street, Philadelphia, PA 19101.

6.    At all times material hereto, Defendant, Consolidated Rail Corporation, d/b/a Conrail, acted by and through their duly authorized agents, ostensible agents, employees,

workmen, and servants, all of whom were working in furtherance of the business interests of the Defendant herein, Consolidated Rail Corporation, d/b/a Conrail.

7.      Defendant, Consolidated Rail Corporation, d/b/a Conrail, is vicariously liable for the negligent acts and/or omissions of it's duly authorized agents, ostensible agents, employees, workmen, and servants, all of whom were working in furtherance of the business interests of the Defendant herein, Consolidated Rail Corporation, d/b/a Conrail.

8.      Defendant, Conrail Shared Assets, is a business entity, organized and existing under and by virtue of the laws of the Commonwealth of Pennsylvania, with a primary place of business and a registered office address located at 2001 Market Street, Philadelphia, PA 19101.

9.      At all times material hereto, Defendant, Conrail Shared Assets, acted by and through their duly authorized agents, ostensible agents, employees, workmen, and servants, all of whom were working in furtherance of the business interests of the Defendant herein, Conrail Shared Assets.

10.      Defendant, Conrail Shared Assets, is vicariously liable for the negligent acts and/or omissions of it's duly authorized agents, ostensible agents, employees, workmen, and servants, all of whom were working in furtherance of the business interests of the Defendant herein, Conrail Shared Assets.

11.      Defendant, CSX Corporation, is a business entity, organized and existing under and by virtue of the laws of the Commonwealth of Virginia, with a primary place of business and a registered office address located at 500 Water Street, 15th Floor, Jacksonville, FL 32202.

12.      Defendant, CSX Corporation, is registered with the Pennsylvania Department of State to do business within the Commonwealth of Pennsylvania.

13.      Defendant, CSX Corporation, regularly conducts business within the City of

Philadelphia.

14.     At all times material hereto, Defendant, CSX Corporation, acted by and through their duly authorized agents, ostensible agents, employees, workmen, and servants, all of whom were working in furtherance of the business interests of the Defendant herein, CSX Corporation.

15.     Defendant, CSX Corporation, is vicariously liable for the negligent acts and/or omissions of it's duly authorized agents, ostensible agents, employees, workmen, and servants, all of whom were working in furtherance of the business interests of the Defendant herein, CSX Corporation.

16.     Defendant, CSX Transportation, Inc., is a business entity, organized and existing under and by virtue of the laws of the Commonwealth of Virginia, with a primary place of business and a registered office address located at 500 Water Street, 15th Floor, Jacksonville, FL 32202.

17.     Defendant, CSX Transportation, Inc., is registered with the Pennsylvania Department of State to do business within the Commonwealth of Pennsylvania.

18.     Defendant, CSX Transportation, Inc., regularly conducts business within the City of Philadelphia.

19.     At all times material hereto, Defendant, CSX Transportation, Inc., acted by and through their duly authorized agents, ostensible agents, employees, workmen, and servants, all of whom were working in furtherance of the business interests of the Defendant herein, CSX Transportation, Inc.

20.     Defendant, CSX Transportation, Inc., is vicariously liable for the negligent acts and/or omissions of it's duly authorized agents, ostensible agents, employees, workmen, and servants, all of whom were working in furtherance of the business interests of the Defendant

herein, CSX Transportation, Inc.

21.     Defendant, Norfolk Southern Corporation, is a business entity, organized and existing under and by virtue of the laws of the Commonwealth of Virginia, with a primary place of business and a registered office address located at 110 Franklin Road SE, Roanoke, VA 24042.

22.     Defendant, Norfolk Southern Corporation, is registered with the Pennsylvania Department of State to do business within the Commonwealth of Pennsylvania.

23.     Defendant, Norfolk Southern Corporation, regularly conducts business within the City of Philadelphia.

24.     At all times material hereto, Defendant, Norfolk Southern Corporation, acted by and through their duly authorized agents, ostensible agents, employees, workmen, and servants, all of whom were working in furtherance of the business interests of the Defendant herein, Norfolk Southern Corporation.

25.     Defendant, Norfolk Southern Corporation, is vicariously liable for the negligent Acts and/or omissions of it's duly authorized agents, ostensible agents, employees, workmen, and servants, all of whom were working in furtherance of the business interests of the Defendant herein, Norfolk Southern Corporation.

26.     Defendant, Norfolk Southern Railway Company, is a business entity, organized and existing under and by virtue of the laws of the Commonwealth of Virginia, with a primary place of business and a registered office address located at 110 Franklin Road SE, Roanoke, VA 24042.

27.     Defendant, Norfolk Southern Railway Company, is registered with the Pennsylvania Department of State to do business within the Commonwealth of Pennsylvania.

28.     Defendant, Norfolk Southern Railway Company, regularly conducts business within the City of Philadelphia.

29.     At all times material hereto, Defendant, Norfolk Southern Railway Company, acted by and through their duly authorized agents, ostensible agents, employees, workmen, and servants, all of whom were working in furtherance of the business interests of the Defendant herein, Norfolk Southern Railway Company.

30.     Defendant, Norfolk Southern Railway Company, is vicariously liable for the negligent acts and/or omissions of it's duly authorized agents, ostensible agents, employees, workmen, and servants, all of whom were working in furtherance of the business interests of the Defendant herein, Norfolk Southern Corporation.

## II.   JURISDICTION

31.     Respectfully, This Honorable Court lacks either federal question or diversity jurisdiction in this action.

32.     The claims made in this Amended Complaint involve questions of state law.

33.     Plaintiff asserts no federal claims.

34.     There is a lack of diversity of citizenship among Plaintiff and every Defendant in this action as Plaintiff has made colorable claims of negligence, under state law, against three Conrail entities, each of whom are corporate citizens of the Commonwealth of Pennsylvania, as is Plaintiff.

## III.  FACTS

35.     On or about May 16, 2009, Plaintiff, Azriel Weaver, who was then a minor, resided with her older brother, Andrew Ruch, and his family at 353 W. 20th Street, Erie, Pennsylvania.  She resided with her brother as a result of the death of her parents in 2005.

36.     The City of Erie is divided by railroad tracks that run parallel to the shoreline of Lake Erie.  More particularly, the tracks are approximately one mile southeast of the shoreline.

37.     It is believed and therefore averred that the aforementioned railroad tracks either are, or have been, owned, operated, maintained and controlled by the Defendants in this action.

38.     There are permissive crossings at nearly every street intersection of the railroad in the heavily populated residential areas of the City of Erie.

39.     In particular, there is a permissive crossing where Chestnut Street crosses the railroad tracks.

40.     The permissive crossing at Chestnut Street is marked by a well defined, frequently used and well-beaten foot paths leading North and South across the tracks.

41.     The permissive railroad crossing at Chestnut Street is frequently used as Chestnut Street is roughly in the middle between the two closest underpasses located at Sassafras Street and Cherry Street, which are nearly one mile apart from each other.

42.     Due to the distances between Chestnut Street and the closest underpasses, a pedestrian would have an approximately one mile walk of approximately twenty minutes to avoid using the Chestnut Street permissive crossing, which is only approximately one hundred and eighty feet (180) feet wide.

43.     The permissive crossing at Chestnut Street is not fenced, blocked or barricaded in any way.

44.     There are no signs posted at the Chestnut Street permissive crossing to keep pedestrians off of the track area.

45.     The permissive crossings at Chestnut Street, is frequented used by the public at large and, in particular, by school aged children who cross the tracks going to and from school.

46.     More specifically, in the section of the City of Erie where this incident occurred, the area to the North of the tracks, between Lake Erie and the tracks, is predominantly commercial. The area to the South of the tracks is primarily residential. Both the public and private high schools that serve the relevant area of town are located in the commercial area North of the tracks, while a large number of the minors who attend those schools live in the residential area South of the tracks.

47.     The Defendants knew or should have known of the publicly used permissive crossing at Chestnut Street due to the following: the fact that the tracks are in a residential area and are not fenced off in any way; the fact that Chestnut Street, on both the North and South sides, is paved without interruption right up to the railroad ballast; the presence of well defined foot paths crossing the tracks; the frequency of people crossing while in the presence of the Defendants' employees; evidence of graffiti and garbage disposal near the tracks; the fact that schools and the residential areas that house their students are divided by the tracks; and reported incidents of injuries at permissive crossings on this area dating back many decades.

48.     On or about May 16, 2009, which was the day of Azriel Weaver's Junior Prom, Ms. Weaver was returning home from a friend's house, which was located on Chestnut Street on the North side of the tracks. Ms. Weaver's home was near the intersection of 20th Street and Chestnut Street, on the South side of the tracks.

49.     While using the permissive crossing at Chestnut Street at approximately 12:30 p.m. on May 16, 2009, Ms. Weaver encountered a stationary consist of freight cars that blocked the permissive crossing. The consist was attached to CSX Engine Q38615, which was under the control of CSX engineers Harold Vandevelde and Roca Estrella.

50.     The consist of rail cars was over a mile long and had been stationary for at least as

long as Ms. Weaver had been walking within sight of the permissive crossing.

51.      As the rail cars were stopped, had been stopped for some time, and there was no indication whatsoever that they would begin to move at any time in the near future, Ms. Weaver proceeded to cross in between two gondola style rail cars that were blocking the crossing.

52.      As Ms. Weaver stepped up and over the coupler that connected the two rail cars, the consist lurched forward and began to roll, without warning of any kind, thereby causing Ms. Weaver to lose her balance and fall to the tracks below.

53.      While on the tracks, Ms. Weaver was run over by the rail car, which instantly amputated her left leg at the knee.

54.      After falling, Ms. Weaver was situated on the tracks such that the truck assembly of the rail car also ran over her left thigh, thereby pulverizing and tearing away a significant amount of flesh, muscle and other soft tissue over the entire length of the thigh up to an area past the hip.

55.      Ms. Weaver then crawled approximately twenty feet back to the edge of Chestnut Street and made a tourniquet from a shirt she had in her back pack and wrapped what remained of her leg.

56.      As the consist of rail cars continued on and left Ms. Weaver to bleed to death, she began screaming for help.  Her calls for help were responded to by another pedestrian who then called for help.

57.      The amputated portion of Ms. Weaver's leg was retrieved from the tracks by the emergency responders and was preserved to facilitate the use of the skin to replace the gaping hole over her thigh and at the site of the amputation.

58.      In the days following the amputation, more of Ms. Weaver's leg had to be

removed due to the profound vascular and soft tissue damage to the remaining portions of her left thigh.

59.    At all times material hereto, Ms. Weaver had an express or implied license to pass over the property of the Defendant railroad companies.

60.    At all times material hereto, Defendants owed a duty of care to Plaintiff, Ms. Weaver, equal to that required at a regular crossing.

61.    Plaintiff, Ms. Weaver, sustained profound and permanent injuries that are hereinafter described in greater detail.

62.    The aforesaid accident was due solely to the negligence and carelessness of Defendants, jointly and/or severally, acting as aforesaid, and was due in no manner whatsoever to any act or failure to act on the part of the Plaintiff.

## COUNT I

### AZRIEL WEAVER V. CONRAIL, INC.,

### CONSOLIDATED RAIL CORPORATION, D/B/A CONRAIL AND CONRAIL SHARED ASSETS

### NEGLIGENT MAINTENANCE OF RAILROAD FACILITIES

63.    Plaintiff hereby incorporates by reference thereto all of the General Averments contained in Paragraphs 1 through 62 as though fully set forth at length herein.

64.    Conrail, Inc., Consolidated Rail Corporation, d/b/a Conrail and Conrail Shared Assets (hereinafter collectively referred to as the "Conrail Defendants") owned the railroad tracks that divided the City of Erie for decades, up until June 1, 1999, at which time, upon information and belief, the tracks were transferred to the New York Central Lines and Pennsylvania Lines, LLC and later acquired by CSX.

65.     The Conrail Defendants are liable to Plaintiff in that they had actual knowledge of permissive crossings throughout the City of Erie, including at Chestnut Street, and failed, during their ownership, to install pedestrian underpasses or overpasses at reasonable intervals to facilitate pedestrians who walked to and from the commercial and residential districts that were divided by the tracks.

66.     The Conrail Defendants are liable to Plaintiff in that they had actual knowledge of permissive crossings throughout the City of Erie, including at Chestnut Street, and failed, during their ownership, to install a ground level pedestrian crossing with appropriate traffic controls to permit safe crossing at Chestnut Street.

67.     The Conrail Defendants are also liable to Plaintiff pursuant to Restatement (Second) of Torts § 353 in that they failed to disclose a dangerous condition on the property at the time the railroad tracks in Erie were sold and/or transferred to new owners.

68.     Specifically, the dangerous condition that was not disclosed was not merely the existence of a permissive crossing at Chestnut Street, but a permissive crossing at Chestnut Street that was frequented by school aged minors to travel back and forth to school.

68.     The risk posed to pedestrians, that of being struck or run down by trains, was unreasonable in light of the Conrail Defendants' actual knowledge of the permissive crossing and the relative ease of installing a formal ground level crossing with traffic controls.

69.     CSX Corporation and CSX Transportation, Inc. (hereinafter the "CSX Defendants") has admitted that, in the absence of any warning or notice of the condition by the Conrail Defendants, that they did not know of the permissive crossing at Chestnut Street.

70.     The Conrail Defendants had reason to believe that the condition, that of a permissive crossing at Chestnut Street that is frequented by minors, would go undiscovered by

the new owners of the tracks by virtue of the fact that there are no manned railroad structures, stops or stations in that area, as such, the area would only be seen, by railroad employees, in use as a permissive crossing periodically by railroad maintenance crews.

     71.     The negligence and carelessness of The Conrail Defendants, during their time of ownership, both directly and acting through their agents, employees, servants, independent contractors and/or workmen, whose identity is subject to discovery and within Defendant's sole custody, consisted of the following:

     a.     Creating a known dangerous hazard in the nature of uncontrolled permissive crossings;

     b.     Failure to safeguard the railroad track area;

     c.     Ignoring actual knowledge of permissive crossings in the City of Erie and, in particular, at Chestnut Street;

     d.     Failure to either maintain a proper crossing area at Chestnut Street or to close it off to pedestrians;

     e.     Failing to place underpasses, overpasses or formal ground level crossings at reasonable intervals through the City of Erie to prevent the well known public practice of crossing tracks without traffic controls;

     f.     Failing to fence off the track area;

     g.     Failure to properly train it's employees to recognize and report the use of permissive crossings by the general public;

     h.     Failure to follow regulations and state laws related to maintenance of at grade railroad crossings;

     i.     Failure to install railroad crossing warning devices;

j.     Failing to install railroad crossing warning signs;

k.     Failure to inform the subsequent owners of the railroad tracks of the known dangerous condition in the nature of a permissive crossing at Chestnut Street that was frequently used by minors walking to and from school;

l.     In being otherwise negligent, careless and/or reckless, the particulars of which are presently unknown to the Plaintiffs but which may be learned by discovery procedures provided by the Pennsylvania Rules of Civil Procedure or which may be learned at the trial of this case.

72.     As a direct result of the Defendants' joint and several negligence, carelessness and recklessness, Plaintiff has suffered injuries which include, but are not limited to, the following: loss of her left leg; profound loss of thigh muscle and soft tissue; acute traumatic amputation; profound blood loss; complete transection of the vessels of the left leg; complete transection of the nerves of the left leg; profound skin loss; the need for extensive critical medical care; the need for invasive surgeries; the need for numerous skin graft surgeries; the need for prolonged intensive care hospitalization; permanent nerve injury; paralysis of the left upper leg; the loss of the ability to walk, or in the alternative, to walk without the assistance of medical devices; profound disfigurement; profound scarring; significant physical and emotional pain and suffering; loss of sleep; increased risk of medical complications; damage to nerves and the nervous system; and other ailments that Plaintiff's treating physicians may diagnose.

73.     As a direct result of the Defendants' joint and several negligence, carelessness and recklessness, Plaintiff, has been or will be required to receive and undergo medical attention and care and to expend various sums of money and to incur various expenses and may be required to continue to expend such sums or incur such expenditures for an indefinite time in the future.

74.    As a direct result of the Defendants' joint and several negligence, carelessness and recklessness, Plaintiff, has suffered a severe and permanent loss of earnings and impairment of earning power and capacity.

75.    As a direct result of the Defendants' joint and several negligence, carelessness and recklessness, Plaintiff, has suffered a loss of the ability to traverse stairs, thereby rendering her two story home an inadequate environment for her.

76.    As a direct result of the Defendants' joint and several negligence, carelessness and recklessness, Plaintiff, has suffered medically determinable physical and/or mental impairment which prevents the Plaintiff from performing all or substantially all of the material acts and duties which constituted the Plaintiff's usual and customary activities prior to the accident.

77.    As a direct result of the Defendants' joint and several negligence, carelessness and recklessness, Plaintiff, has or may hereafter incur other financial expenses which do or may exceed amounts which Plaintiff may otherwise be entitled to recover.

78.    As a direct result of the Defendants' joint and several negligence, carelessness and recklessness, Plaintiff, has suffered severe physical pain, mental anguish and humiliation, and will continue to suffer same for an indefinite time in the future.

79.    As a direct result of the Defendants' joint and several negligence, carelessness and recklessness, Plaintiff, has suffered a permanent loss of the enjoyment of life.

WHEREFORE, Plaintiff, Azriel Weaver, demands compensatory and special damages, jointly and severally, in an amount in excess of fifty thousand dollars ($50,000.00) against Defendants, together with costs, interest and Rule 238 delay damages.

## COUNT II

### AZRIEL WEAVER V. CONRAIL, INC.,

### CONSOLIDATED RAIL CORPORATION, D/B/A CSX CORPORATION, CSX TRANSPORTATION, INC., NORFOLK SOUTHERN CORPORATION, AND NORFOLK SOUTHERN RAILWAY COMPANY

### NEGLIGENT MAINTENANCE OF RAILROAD FACILITIES

80.     Plaintiff hereby incorporates by reference thereto all of the General Averments contained in Paragraphs 1 through 79 as though fully set forth at length herein.

81.     The negligence and carelessness of Defendants, both directly and acting through their agents, employees, servants, independent contractors and/or workmen, whose identity is subject to discovery and within Defendant's sole custody, consisted of the following:

a.      Exposing Plaintiff to a significant hazard;

b.      Creating a known dangerous hazard in the nature of uncontrolled permissive crossings;

c.      Failure to safeguard the railroad track area;

d.      Ignoring actual knowledge of permissive crossings in the City of Erie and, in particular, at Chestnut Street;

e.      Failure to either maintain a proper crossing area at Chestnut Street or to close it off to pedestrians;

f.      Failing to place underpasses, overpasses or formal ground level crossings at reasonable intervals through the City of Erie to prevent the well known public practice of crossing tracks without traffic controls;

g.      Failing to fence off the track area;

h.     Failure to properly train it's employees to recognize and report the use of
       permissive crossings by the general public;

i.     Failure to follow regulations and state laws related to maintenance of at grade
       railroad crossings;

j.     Failure to install railroad crossing warning devices;

k.     Failing to install railroad crossing warning signs;

l.     Permitting train operation policies and procedures that allow trains to stop in
       permissive crosswalks in the City of Erie;

m.     Creating a hazard by permitting permissive crossings to be blocked in residential
       areas;

n.     Failure to maintain policies requiring the signaling, by horn, whistle or otherwise
       prior to moving trains in a permissive crossing;

o.     In being otherwise negligent, careless and/or reckless, the particulars of which are
       presently unknown to the Plaintiffs but which may be learned by
       discovery procedures provided by the Pennsylvania Rules of Civil Procedure or
       which may be learned at the trial of this case.

82.     As a direct result of the Defendants' joint and several negligence, carelessness and
recklessness, Plaintiff has suffered injuries which include, but are not limited to, the following:
loss of her left leg; profound loss of thigh muscle and soft tissue; acute traumatic amputation;
profound blood loss; complete transection of the vessels of the left leg; complete transection of
the nerves of the left leg; profound skin loss; the need for extensive critical medical care; the
need for invasive surgeries; the need for numerous skin graft surgeries; the need for prolonged
intensive care hospitalization; permanent nerve injury; paralysis of the left upper leg; the loss of

the ability to walk, or in the alternative, to walk without the assistance of medical devices;

profound disfigurement; profound scarring; significant physical and emotional pain and

suffering; loss of sleep; increased risk of medical complications; damage to nerves and the

nervous system; and other ailments that Plaintiff's treating physicians may diagnose.

83.    As a direct result of the Defendants' joint and several negligence, carelessness and

recklessness, Plaintiff, has been or will be required to receive and undergo medical attention and

care and to expend various sums of money and to incur various expenses and may be required to

continue to expend such sums or incur such expenditures for an indefinite time in the future.

84.    As a direct result of the Defendants' joint and several negligence, carelessness and

recklessness, Plaintiff, has suffered a severe and permanent loss of earnings and impairment of

earning power and capacity.

85.    As a direct result of the Defendants' joint and several negligence, carelessness

and recklessness, Plaintiff, has suffered a loss of the ability to traverse stairs, thereby rendering

her two story home an inadequate environment for her.

86.    As a direct result of the Defendants' joint and several negligence, carelessness and

recklessness, Plaintiff, has suffered medically determinable physical and/or mental impairment

which prevents the Plaintiff from performing all or substantially all of the material acts and

duties which constituted the Plaintiff's usual and customary activities prior to the accident.

87.    As a direct result of the Defendants' joint and several negligence, carelessness and

recklessness, Plaintiff, has or may hereafter incur other financial expenses which do or may

exceed amounts which Plaintiff may otherwise be entitled to recover.

88.     As a direct result of the Defendants' joint and several negligence, carelessness and recklessness, Plaintiff, has suffered severe physical pain, mental anguish and humiliation, and will continue to suffer same for an indefinite time in the future.

89.     As a direct result of the Defendants' joint and several negligence, carelessness and recklessness, Plaintiff, has suffered a permanent loss of the enjoyment of life.

WHEREFORE, Plaintiff, Azriel Weaver, demands compensatory and special damages, jointly and severally, in an amount in excess of fifty thousand dollars ($50,000.00) against Defendants, together with costs, interest and Rule 238 delay damages.

## COUNT III

### AZRIEL WEAVER V. CSX CORPORATION AND CSX TRANSPORTATION, INC.

### NEGLIGENT MAINTENANCE AND OPERATION OF RAIL VEHICLES

90.     Plaintiff hereby incorporates by reference thereto all of the General Averments contained in Paragraphs 1 through 89 as though fully set forth at length herein.

91.     The negligence and carelessness of all Defendants, both directly and acting through their agents, employees, servants, independent contractors and/or workmen, whose identity is subject to discovery and within Defendant's sole custody, consisted of the following:

    a.     Exposing Plaintiff to a significant hazard;

    b.     Stopping a consist of rail cars, which was more than a mile long, in a residential area known to contain numerous permissive crossings, including the one located at Chestnut Street;

    c.     Failure to sound an audible warning prior to moving a consist of rail cars that had been stationary for more than a half hour;

d.  Failure to determine that the permissive crossings that were blocked by the parked train were clear of pedestrians prior to accelerating the train;

e.  Failure to equip the train with a video system;

g.  Failure to properly staff the train to ensure safe operation;

h.  Failure to schedule train traffic so as to avoid the need to stop freight cars in residential areas that are known to be fraught with permissive crossings;

j.  Failure to stop after running over Plaintiff;

k.  Moving the train while Plaintiff was crossing at a permissive crossing;

l.  Running over Plaintiff with a freight train;

m.  Failure to properly train the operators of the train regarding start up procedures in heavily populated residential areas;

n.  Failure to inspect the consist of rail cars before moving;

o.  Blocking permissive crossings;

q.  In being otherwise negligent, careless and/or reckless, the particulars of which are presently unknown to the Plaintiffs but which may be learned by discovery procedures provided by the Pennsylvania Rules of Civil Procedure or which may be learned at the trial of this case.

92.  As a direct result of the Defendants' joint and several negligence, carelessness and recklessness, Plaintiff has suffered injuries which include, but are not limited to, the following: loss of her left leg; profound loss of thigh muscle and soft tissue; acute traumatic amputation; profound blood loss; complete transection of the vessels of the left leg; complete transection of the nerves of the left leg; profound skin loss; the need for extensive critical medical care; the need for invasive surgeries; the need for numerous skin graft surgeries; the need for prolonged

intensive care hospitalization; permanent nerve injury; paralysis of the left upper leg; the loss of the ability to walk, or in the alternative, to walk without the assistance of medical devices; profound disfigurement; profound scarring; significant physical and emotional pain and suffering; loss of sleep; increased risk of medical complications; damage to nerves and the nervous system; and other ailments that Plaintiff's treating physicians may diagnose.

93.    As a direct result of the Defendants' joint and several negligence, carelessness and recklessness, Plaintiff, has been or will be required to receive and undergo medical attention and care and to expend various sums of money and to incur various expenses and may be required to continue to expend such sums or incur such expenditures for an indefinite time in the future.

94.    As a direct result of the Defendants' joint and several negligence, carelessness and recklessness, Plaintiff, has suffered a severe and permanent loss of earnings and impairment of earning power and capacity.

95.    As a direct result of the Defendants' joint and several negligence, carelessness and recklessness, Plaintiff, has suffered a loss of the ability to traverse stairs, thereby rendering her two story home an inadequate environment for her.

96.    As a direct result of the Defendants' joint and several negligence, carelessness and recklessness, Plaintiff, has suffered medically determinable physical and/or mental impairment which prevents the Plaintiff from performing all or substantially all of the material acts and duties which constituted the Plaintiff's usual and customary activities prior to the accident.

97.    As a direct result of the Defendants' joint and several negligence, carelessness and recklessness, Plaintiff, has or may hereafter incur other financial expenses which do or may exceed amounts which Plaintiff may otherwise be entitled to recover.

98.     As a direct result of the Defendants' joint and several negligence, carelessness and recklessness, Plaintiff, has suffered severe physical pain, mental anguish and humiliation, and will continue to suffer same for an indefinite time in the future.

99.     As a direct result of the Defendants' joint and several negligence, carelessness and recklessness, Plaintiff, has suffered a permanent loss of the enjoyment of life.

WHEREFORE, Plaintiff, Azriel Weaver, demands compensatory and special damages, jointly and severally, in an amount in excess of fifty thousand dollars ($50,000.00) against Defendants, together with costs, interest and Rule 238 delay damages.

VILLARI, LENTZ & LYNAM, LLC

_____
Thomas A. Lynam, III
Leonard G. Villari
Attorneys for Plaintiff

Dated:_____

## CERTIFICATE OF SERVICE

I, Thomas A. Lynam, III, Esquire, hereby certify that the foregoing Amended Civil

Action Complaint  was served on this 16th day of July 2010, via First Class Mail, postage

prepaid, upon the following:

Anthony J. Rash, Esquire                   Richard K. Hohn, Esquire
Dickie McCamey                             Hohn & Scheuerle
Two PPG Place - Suite 400                  1700 Market St., Ste. 3242
Pittsburgh, PA 15222                       Philadelphia, PA 19102


_____TAL5002_____
THOMAS A. LYNAM, III, ESQUIRE
Attorney for Plaintiff



**VILLARI, LENTZ & LYNAM, LLC**
By:   Thomas A. Lynam, III, Esquire
        Leonard G. Villari, Esquire
Attorney I.D. No. 83817; 68844
1600 Market Street, Suite 1800
PNC Bank Building
Philadelphia, PA 19103
215-568-1990 / Fax: 215-568-9920
E-Mail: tlynam@vll-law.com / lgvillari@aol.com

**THIS IS A MAJOR JURY TRIAL
MATTER.  ASSESSMENT OF
DAMAGES HEARING REQUIRED**



**ATTORNEYS FOR PLAINTIFFS**

---

| | |
|---|---|
| AZRIEL WEAVER<br>4711 Fowler Street<br>Philadelphia, PA 19127<br><br>        Plaintiff,<br><br>    v.<br><br>CONRAIL, INC.<br>2001 Market Street<br>Philadelphia, PA 19101<br>    -and-<br>CONSOLIDATED RAIL CORPORATION,<br>d/b/a CONRAIL<br>1717 Arch Street<br>Philadelphia, PA 19103<br>    -and-<br>CONRAIL SHARED ASSETS<br>1717 Arch Street<br>Philadelphia, PA 19103<br>    -and-<br>CSX CORPORATION<br>500 Water Street, 15th floor<br>Jacksonville, FL 32202<br>    -and-<br>CSX TRANSPORTATION, INC.<br>500 Water Street, 15th floor<br>Jacksonville, FL 32202<br>    -and-<br>NORFOLK SOUTHERN CORPORATION<br>1515 Market Street, Ste. 1210<br>Philadelphia, PA 19103<br>    -and-<br>NORFOLK SOUTHERN<br>RAILWAY COMPANY<br>1515 Market Street, Ste. 1210 | COURT OF COMMON PLEAS<br>PHILADELPHIA COUNTY<br><br><br>AUGUST TERM, 2009<br><br>NO. |

Case ID: 090801720

Philadelphia, PA 19103                    :
                                          :
                Defendant.                :

---

## CIVIL ACTION COMPLAINT
## 2V - NEGLIGENCE

1.      Plaintiff, Azriel Weaver, is an adult individual with a principle domicile located at

4711 Fowler Street, Philadelphia, PA 19127.

2.      Defendant, Conrail, Inc. is a corporation, organized and existing under and by virtue

of the laws of the Commonwealth of Pennsylvania, with a primary place of business and a registered

office address located at 2001 Market Street, Philadelphia, PA 19101.

3.      At all times material hereto, Defendant, Conrail, Inc., acted by and through their duly

authorized agents, ostensible agents, employees, workmen, and servants, all of whom were working

in furtherance of the business interests of the Defendant herein, Conrail, Inc.

4.      Defendant, Conrail, Inc., is vicariously liable for the negligent acts and/or omissions

of it's duly authorized agents, ostensible agents, employees, workmen, and servants, all of whom

were working in furtherance of the business interests of the Defendant herein, Conrail, Inc.

5.      Defendant, Consolidated Rail Corporation, d/b/a Conrail, is a corporation, organized

and existing under and by virtue of the laws of the Commonwealth of Pennsylvania, with a primary

place of business and a registered office address located at 2001 Market Street, Philadelphia, PA

19101.

6.      At all times material hereto, Defendant, Consolidated Rail Corporation, d/b/a Conrail,

acted by and through their duly authorized agents, ostensible agents, employees, workmen, and

servants, all of whom were working in furtherance of the business interests of the Defendant herein,

Consolidated Rail Corporation, d/b/a Conrail.

Case ID: 090801720

7.     Defendant, Consolidated Rail Corporation, d/b/a Conrail, is vicariously liable for the negligent acts and/or omissions of it's duly authorized agents, ostensible agents, employees, workmen, and servants, all of whom were working in furtherance of the business interests of the Defendant herein, Consolidated Rail Corporation, d/b/a Conrail.

8.     Defendant, Conrail Shared Assets, is a business entity, organized and existing under and by virtue of the laws of the Commonwealth of Pennsylvania, with a primary place of business and a registered office address located at 2001 Market Street, Philadelphia, PA 19101.

9.     At all times material hereto, Defendant, Conrail Shared Assets, acted by and through their duly authorized agents, ostensible agents, employees, workmen, and servants, all of whom were working in furtherance of the business interests of the Defendant herein, Conrail Shared Assets.

10.    Defendant, Conrail Shared Assets, is vicariously liable for the negligent acts and/or omissions of it's duly authorized agents, ostensible agents, employees, workmen, and servants, all of whom were working in furtherance of the business interests of the Defendant herein, Conrail Shared Assets.

11.    Defendant, CSX Corporation, is a business entity, organized and existing under and by virtue of the laws of the Commonwealth of Virginia, with a primary place of business and a registered office address located at 500 Water Street, 15th Floor, Jacksonville, FL 32202.

12.    Defendant, CSX Corporation, is registered with the Pennsylvania Department of State to do business within the Commonwealth of Pennsylvania.

13.    Defendant, CSX Corporation, regularly conducts business within the City of Philadelphia.

14.     At all times material hereto, Defendant, CSX Corporation, acted by and through their duly authorized agents, ostensible agents, employees, workmen, and servants, all of whom were working in furtherance of the business interests of the Defendant herein, CSX Corporation.

15.     Defendant, CSX Corporation, is vicariously liable for the negligent acts and/or omissions of it's duly authorized agents, ostensible agents, employees, workmen, and servants, all of whom were working in furtherance of the business interests of the Defendant herein, CSX Corporation.

16.     Defendant, CSX Transportation, Inc., is a business entity, organized and existing under and by virtue of the laws of the Commonwealth of Virginia, with a primary place of business and a registered office address located at 500 Water Street, 15th Floor, Jacksonville, FL 32202.

17.     Defendant, CSX Transportation, Inc., is registered with the Pennsylvania Department of State to do business within the Commonwealth of Pennsylvania.

18.     Defendant, CSX Transportation, Inc., regularly conducts business within the City of Philadelphia.

19.     At all times material hereto, Defendant, CSX Transportation, Inc., acted by and through their duly authorized agents, ostensible agents, employees, workmen, and servants, all of whom were working in furtherance of the business interests of the Defendant herein, CSX Transportation, Inc.

20.     Defendant, CSX Transportation, Inc., is vicariously liable for the negligent acts and/or omissions of it's duly authorized agents, ostensible agents, employees, workmen, and servants, all of whom were working in furtherance of the business interests of the Defendant herein, CSX Transportation, Inc.

21.     Defendant, Norfolk Southern Corporation, is a business entity, organized and existing

under and by virtue of the laws of the Commonwealth of Virginia, with a primary place of business and a registered office address located at 110 Franklin Road SE, Roanoke, VA 24042.

22.   Defendant, Norfolk Southern Corporation, is registered with the Pennsylvania Department of State to do business within the Commonwealth of Pennsylvania.

23.   Defendant, Norfolk Southern Corporation, regularly conducts business within the City of Philadelphia.

24.   At all times material hereto, Defendant, Norfolk Southern Corporation, acted by and through their duly authorized agents, ostensible agents, employees, workmen, and servants, all of whom were working in furtherance of the business interests of the Defendant herein, Norfolk Southern Corporation.

25.   Defendant, Norfolk Southern Corporation, is vicariously liable for the negligent acts and/or omissions of it's duly authorized agents, ostensible agents, employees, workmen, and servants, all of whom were working in furtherance of the business interests of the Defendant herein, Norfolk Southern Corporation.

26.   Defendant, Norfolk Southern Railway Company, is a business entity, organized and existing under and by virtue of the laws of the Commonwealth of Virginia, with a primary place of business and a registered office address located at 110 Franklin Road SE, Roanoke, VA 24042.

27.   Defendant, Norfolk Southern Railway Company, is registered with the Pennsylvania Department of State to do business within the Commonwealth of Pennsylvania.

28.   Defendant, Norfolk Southern Railway Company, regularly conducts business within the City of Philadelphia.

29.   At all times material hereto, Defendant, Norfolk Southern Railway Company, acted by and through their duly authorized agents, ostensible agents, employees, workmen, and servants, all

Case ID: 090801720

of whom were working in furtherance of the business interests of the Defendant herein, Norfolk

Southern Railway Company.

30.     Defendant, Norfolk Southern Railway Company, is vicariously liable for the negligent

acts and/or omissions of it's duly authorized agents, ostensible agents, employees, workmen, and

servants, all of whom were working in furtherance of the business interests of the Defendant herein,

Norfolk Southern Corporation.

31.     On or about May 16, 2009, Plaintiff, Azriel Weaver, who was then a minor, resided

with her older brother, Andrew Ruch, and his family at 353 W. 20th Street, Erie, Pennsylvania.  She

resided with her brother as a result of the death of her parents in 2005.

32.     The City of Erie is divided by railroad tracks that run parallel to the shoreline of Lake

Erie.  More particularly, the tracks are approximately one mile southeast of the shoreline.

33.     It is believed and therefore averred that the aforementioned railroad tracks are owned,

operated, maintained and controlled by the Defendants in this action.

34.     There are permissive crossings at nearly every street intersection of the railroad in the

heavily populated residential areas of the City of Erie.

35.     In particular, there is a permissive crossing where Chestnut Street crosses the railroad

tracks.

36.     The permissive crossing at Chestnut Street is marked by a well defined, frequently

used and well-beaten foot paths leading North and South across the tracks.

37.     The permissive railroad crossing at Chestnut Street is frequently used as Chestnut

Street is roughly in the middle between the two closest underpasses located at Sassafras Street and

Cherry Street, which are nearly one mile apart from each other.

38.     Due to the distances between Chestnut Street and the closest underpasses, a pedestrian

would have an approximately one mile walk of approximately twenty minutes to avoid using the
Chestnut Street permissive crossing, which is only approximately one hundred and eight feet (180)
feet long.

39. The permissive crossing at Chestnut Street is not fenced, blocked or barricaded in any
way.

40. There are no signs posted at the Chestnut Street permissive crossing to keep
pedestrians off of the track area.

41. The permissive crossings at Chestnut Street, is frequented used by the public at large
and, in particular, by school aged children who cross the tracks going to and from school.

42. The Defendants knew or should have known of the publicly used permissive crossing
at Chestnut Street due to the following: the fact that the tracks are in a residential area and are not
fenced off in any way; the fact that Chestnut Street, on both the North and South sides, is paved
without interruption right up to the railroad ballast; the presence of well defined foot paths crossing
the tracks; the frequency of people crossing while in the presence of the Defendants' employees;
evidence of graffiti and garbage disposal near the tracks; the fact that schools and the residential areas
that house their students are divided by the tracks; and reported incidents of injuries at permissive
crossings in this area dating back many decades.

43. On or about the early afternoon of May 16, 2009, which was the day of Azriel
Weaver's Junior Prom, Ms. Weaver was returning home from a friend's house, which was located on
Chestnut Street on the North side of the tracks.  Ms. Weaver's home was near the intersection of 20th
Street and Chestnut Street, on the South side of the tracks.

44. While using the permissive crossing at Chestnut Street at approximately 12:30 p.m.

Case ID: 090801720

on May 16, 2009, Ms. Weaver encountered a stationary consist of freight cars that blocked the permissive crossing. The consist was attached to CSX Engine Q38615, which was under the control of CSX engineers Harold Vandevelde and Roca Estrella.

45.     The consist of rail cars was over a mile long and had been stationary for at least as long as Ms. Weaver had been walking within sight of the permissive crossing.

46.     As the rail cars were stopped, had been stopped for some time, and there was no indication whatsoever that they would begin to move at any time in the near future, Ms. Weaver proceeded to cross in between two gondola style rail cars that were blocking the crossing.

47.     As Ms. Weaver stepped up and over the coupler that connected the two rail cars, the consist lurched forward and began to roll, without warning of any kind, thereby knocking Ms. Weaver down and causing her to fall to the tracks.

48.     While on the tracks, Ms. Weaver was run over by the rail car, which instantly amputated her left leg at the knee.

49.     After falling, Ms. Weaver was situated on the tracks such that the truck assembly of the rail car also ran over her left thigh, thereby pulverizing and tearing away a significant amount of flesh, muscle and other soft tissue over the entire length of the thigh up to an area past the hip.

50.     Ms. Weaver then crawled approximately twenty feet back to the edge of Chestnut Street and made a tourniquet from a shirt she had in her back pack and wrapped what remained of her leg.

51.     As the consist of rail cars continued on and left Ms. Weaver to bleed to death, she began screaming for help. Her calls for help were responded to by another pedestrian who then called for help.

52.     The amputated portion of Ms. Weaver's leg was retrieved from the tracks by the

emergency responders and was preserved to facilitated the use of the skin to replace the gaping wound over her thigh and at the site of the amputation.

53.     In the days following the amputation, more of Ms. Weaver's leg had to be removed due to the profound vascular and soft tissue damage the remaining portions of her left thigh.

54.     At all times material hereto, Ms. Weaver had an express or implied license to pass over the property of the Defendant railroad companies.

55.     At all times material hereto, Defendants owed a duty of care to Plaintiff, Ms. Weaver, equal to that required at a regular crossing.

56.     Plaintiff, Ms. Weaver, sustained profound and permanent injuries that are hereinafter described in greater detail.

57.     The aforesaid accident was due solely to the negligence and carelessness of Defendants,  jointly and/or severally, acting as aforesaid, and was due in no manner whatsoever to any act or failure to act on the part of the Plaintiff.

## COUNT I

### AZRIEL WEAVER V. ALL DEFENDANTS

### NEGLIGENT MAINTENANCE OF RAILROAD FACILITIES

58.     Plaintiff hereby incorporates by reference thereto all of the General Averments contained in Paragraphs 1 through 57 as though fully set forth at length herein.

59.     The negligence and carelessness of all Defendants, both directly and acting through their agents, employees, servants, independent contractors and/or workmen, whose identity is subject to discovery and within Defendant's sole custody, consisted of the following:

a.      Exposing Plaintiff to a significant hazard;

Case ID: 090801720

b. Creating a known dangerous hazard in the nature of uncontrolled permissive crossings;

c. Failure safeguard the railroad track area;

d. Ignoring actual knowledge of permissive crossings in the City of Erie and, in particular, at Chestnut Street;

e. Failure to either maintain a proper crossing area at Chestnut Street or to close it off to pedestrians;

g. Failing to place underpasses and/or overpasses at reasonable intervals through the City of Erie to prevent the well known public practice of crossing the tracks;

h. Failing to fence off the track area;

j. Failure to properly train it's employees to recognize and report the use of permissive crossings by the general public;

k. Failure to follow regulations and state laws related to maintenance of at grade railroad crossings;

l. Failure to install railroad crossing warning devices;

m. Failing to install railroad crossing warning signs;

n. Permitting train operation policies and procedures that allow trains to stop in permissive crosswalks in the City of Erie;

o. Creating a hazard by permitting permissive crossings to be blocked in residential areas;

p. Failure to maintain policies requiring the signaling, by horn, whistle or otherwise prior to moving trains in a permissive crossing;

Case ID: 090801720

q.    In being otherwise negligent, careless and/or reckless, the particulars of which are

presently unknown to the Plaintiffs but which may be learned by

discovery procedures provided by the Pennsylvania Rules of Civil

Procedure or which may be learned at the trial of his case.

60.    As a direct result of the Defendants' joint and several negligence, carelessness and recklessness, Plaintiff has suffered injuries which include, but are not limited to, the following: loss of her left leg; profound loss of thigh muscle and soft tissue; acute traumatic amputation; profound blood loss; complete transection of the vessels of the left leg; complete transection of the nerves of the left leg; profound skin loss; the need for extensive critical medical care; the need for invasive surgeries; the need for numerous skin graft surgeries; the need for prolonged intensive care hospitalization; permanent nerve injury; paralysis of the left upper leg; the loss of the ability to walk, or in the alternative, to walk without the assistance of medical devices; profound disfigurement; profound scarring; significant physical and emotional pain and suffering; loss of sleep; increased risk of future medical complications; damage to nerves and the nervous system; infection; illness; medical complications; profound depression; loss of will to live; loss of self confidence; loss of self esteem; weight loss; embarrassment; and other ailments that Plaintiff's treating physicians may diagnose.

61.    As a direct result of the Defendants' joint and several negligence, carelessness and recklessness, Plaintiff, to date, has spent three months in the hospital and will be required to receive and undergo medical attention, treatment and care and to expend various sums of money and to incur various expenses and may be required to continue to expend such sums or incur such expenditures for an indefinite time in the future.

62.     As a direct result of the Defendants' joint and several negligence, carelessness and recklessness, Plaintiff, has suffered a severe and permanent loss of earnings and impairment of earning power and capacity and an inability to engage in her desired vocation.

63.     As a direct result of the Defendants' joint and several negligence, carelessness and recklessness, Plaintiff, has suffered a loss of the ability to traverse stairs, thereby rendering her two story home an inadequate environment for her.

64.     As a direct result of the Defendants' joint and several negligence, carelessness and recklessness, Plaintiff, will be unable to complete high school as scheduled.

65.     As a direct result of the Defendants' joint and several negligence, carelessness and recklessness, Plaintiff, now has medical conditions that will be deemed pre-existing by future medical insurers thereby resulting in her inability to obtain reasonable health, disability or life insurance at standard market rates, if at all.

66.     As a direct result of the Defendants' joint and several negligence, carelessness and recklessness, Plaintiff, has suffered medically determinable physical and/or mental impairment which prevents the Plaintiff from performing all or substantially all of the material acts and duties which constituted the Plaintiff's usual and customary activities prior to the accident.

67.     As a direct result of the Defendants' joint and several negligence, carelessness and recklessness, Plaintiff, has or may hereafter incur other financial expenses which do or may exceed amounts which Plaintiff may otherwise be entitled to recover.

68.     As a direct result of the Defendants' joint and several negligence, carelessness and recklessness, Plaintiff, has suffered severe physical pain, mental anguish and humiliation, and will continue to suffer same for an indefinite time in the future.

69.     As a direct result of the Defendants' joint and several negligence, carelessness

Case ID: 090801720

and recklessness, Plaintiff, has suffered a permanent loss of the enjoyment of life.

WHEREFORE, Plaintiff, Azriel Weaver, demands compensatory and special damages, jointly and severally, in an amount in excess of fifty thousand dollars ($50,000.00) against Defendants, together with costs, interest and Rule 238 delay damages.

## COUNT II
### AZRIEL WEAVER V. CSX CORPORATION AND CSX TRANSPORTATION, INC. NEGLIGENT MAINTENANCE AND OPERATION OF RAIL VEHICLES

70.     Plaintiff hereby incorporates by reference thereto all of the General Averments contained in Paragraphs 1 through 69 as though fully set forth at length herein.

71.     The negligence and carelessness of all Defendants, both directly and acting through their agents, employees, servants, independent contractors and/or workmen, whose identity is subject to discovery and within Defendant's sole custody, consisted of the following:

a.      Exposing Plaintiff to a significant hazard;

b.      Stopping a consist of rail cars, which was more than a mile long, in a residential area known to contain numerous permissive crossings, including the one located at Chestnut Street;

c.      Failure sound an audible warning prior to moving a consist of rail cars that had been stationary for more than a half hour;

d.      Failure to determine that the permissive crossings that were blocked by the parked train were clear of pedestrians prior to accelerating the train;

e.      Failure to equip the train with a video system;

g.      Failure to properly staff the train to ensure safe operation;

Case ID: 090801720

h.     Failure to schedule train traffic so as to avoid the need to stop freight cars in

       residential areas that are known to be fraught with permissive crossings;

j.     Failure to stop after running over Plaintiff;

k.     Moving the train while Plaintiff was crossing at a permissive crossing;

l.     Running over Plaintiff with a freight train;

m.     Failure to properly train the operators of the train regarding start up procedures in

       heavily populated residential areas;

n.     Failure to inspect the consist of rail cars before moving;

o.     Blocking permissive crossings;

q.     In being otherwise negligent, careless and/or reckless, the particulars of which are

       presently unknown to the Plaintiffs but which may be learned by

       discovery procedures provided by the Pennsylvania Rules of Civil

       Procedure or which may be learned at the trial of his case.

72.    As a direct result of the Defendants' joint and several negligence, carelessness and

recklessness, Plaintiff has suffered injuries which include, but are not limited to, the following: loss of

her left leg; profound loss of thigh muscle and soft tissue; acute traumatic amputation; profound

blood loss; complete transection of the vessels of the left leg; complete transection of the nerves of the

left leg; profound skin loss; the need for extensive critical medical care; the need for invasive

surgeries; the need for numerous skin graft surgeries; the need for prolonged intensive care

hospitalization; permanent nerve injury; paralysis of the left upper leg; the loss of the ability to walk,

or in the alternative, to walk without the assistance of medical devices; profound disfigurement;

profound scarring; significant physical and emotional pain and suffering; loss of sleep; increased risk

of future medical complications; damage to nerves and the nervous system; infection; illness; medical

Case ID: 090801720

complications; profound depression; loss of will to live; loss of self confidence; loss of self esteem; weight loss; embarrassment; and other ailments that Plaintiff's treating physicians may diagnose.

73.    As a direct result of the Defendants' joint and several negligence, carelessness and recklessness, Plaintiff, to date, has spent three months in the hospital and will be required to receive and undergo medical attention, treatment and care and to expend various sums of money and to incur various expenses and may be required to continue to expend such sums or incur such expenditures for an indefinite time in the future.

74.    As a direct result of the Defendants' joint and several negligence, carelessness and recklessness, Plaintiff, has suffered a severe and permanent loss of earnings and impairment of earning power and capacity and an inability to engage in her desired vocation.

75.    As a direct result of the Defendants' joint and several negligence, carelessness and recklessness, Plaintiff, has suffered a loss of the ability to traverse stairs, thereby rendering her two story home an inadequate environment for her.

76.    As a direct result of the Defendants' joint and several negligence, carelessness and recklessness, Plaintiff, will be unable to complete high school as scheduled.

77.    As a direct result of the Defendants' joint and several negligence, carelessness and recklessness, Plaintiff, now has medical conditions that will be deemed pre-existing by future medical insurers thereby resulting in her inability to obtain reasonable health, disability or life insurance at standard market rates, if at all.

78.    As a direct result of the Defendants' joint and several negligence, carelessness and recklessness, Plaintiff, has suffered medically determinable physical and/or mental impairment which prevents the Plaintiff from performing all or substantially all of the material acts and duties which constituted the Plaintiff's usual and customary activities prior to the accident.

Case ID: 090801720

79.   As a direct result of the Defendants' joint and several negligence, carelessness and recklessness, Plaintiff, has or may hereafter incur other financial expenses which do or may exceed amounts which Plaintiff may otherwise be entitled to recover.

80.   As a direct result of the Defendants' joint and several negligence, carelessness and recklessness, Plaintiff, has suffered severe physical pain, mental anguish and humiliation, and will continue to suffer same for an indefinite time in the future.

81.   As a direct result of the Defendants' joint and several negligence, carelessness and recklessness, Plaintiff, has suffered a permanent loss of the enjoyment of life.

WHEREFORE, Plaintiff, Azriel Weaver, demands compensatory and special damages, jointly and severally, in an amount in excess of fifty thousand dollars ($50,000.00) against Defendants, together with costs, interest and Rule 238 delay damages.

VILLARI, LENTZ & LYNAM, LLC

Thomas A. Lynam, III
Leonard G. Villari
Attorneys for Plaintiff

Dated: __8/14/09__

Case ID: 090801720

## VERIFICATION

Plaintiff verifies that the statements made in this pleading are true and correct to the best of plaintiff's knowledge, information and belief.  To the extent that the pleading contains averments of law and language of counsel and results of investigation, plaintiff has relied on counsel.  Plaintiff understands that false statements herein are made subject to penalties of 18 Pa. §4904, relating to unsworn falsification to authorities.

*Azriel Weaver*

Azriel Weaver

Dated: **6/25/09**

Case ID: 090801720

PLAINTIFF'S
EXHIBIT

3

**DICKIE, McCAMEY & CHILCOTE, P.C.**
By:     John Edward Wall, Esquire
        Pa. I.D. #17405
        Tele. No.:  (412) 392-5256
        Email:  jwall@dmclaw.com
and
        Anthony J. Rash, Esquire
        Pa. I.D. #55944
        Tele. No.:  (412) 392-5222
        Email:  arash@dmclaw.com

Two PPG Place – Suite 400                  Attorneys for Defendants,
Pittsburgh, PA  15222                      Consolidated Rail Corporation,
Main Tele. No.: (412) 281-7272             inaccurately identified as "Conrail
Main Fax. No.: (412) 392-5367              Shared Assets," and Conrail, Inc.

---

| | | |
|---|---|---|
| AZRIEL WEAVER, | : | COURT OF COMMON PLEAS |
| Plaintiff, | : | PHILADELPHIA COUNTY |
| v. | : | |
| | : | August Term, 2009 |
| | : | No. 1720 |
| CONRAIL, INC.; CONSOLIDATED RAIL | : | Case I.D. #:  090801720 |
| CORPORATION, d/b/a CONRAIL; | : | |
| CONRAIL SHARED ASSETS; CSX | : | |
| CORPORATION; CSX TRANSPORTATION, | : | |
| INC; NORFOLK SOUTHERN | : | |
| CORPORATION; and NORFOLK | : | |
| SOUTHERN RAILWAY COMPANY, | : | |
| | : | **JURY TRIAL DEMANDED** |
| Defendants. | : | |

---

## NOTICE OF REMOVAL OF ACTION TO FEDERAL COURT

PLEASE TAKE NOTICE that on this 23rd day of November, 2009, the undersigned

attorneys for Defendants, CSX Corporation, CSX Transportation, Inc., Consolidated Rail

Corporation and Conrail, Inc., filed a Notice of Removal of this action from the Court of

Common Pleas of Philadelphia County, Pennsylvania, to the United States District Court for the

Eastern District of Pennsylvania.  A true and correct copy of said Notice of Removal is attached hereto and made a part hereof.

Respectfully submitted by,

DICKIE, McCAMEY & CHILCOTE, P.C.

John Edward Wall, Esquire
Pa. I.D. #17405
Anthony J. Rash, Esquire
Pa. I.D. #55944

Attorneys for Defendants, CSX Corporation, CSX Transportation, Inc., Consolidated Rail Corporation, inaccurately identified as "Conrail Shared Assets," and Conrail, Inc.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

AZRIEL WEAVER,                              )
                              Plaintiff,    )
                                            )
        v.                                  )      Civil Action No.
                                            )
CONRAIL, INC.; CONSOLIDATED RAIL            )
CORPORATION, d/b/a CONRAIL;                 )
CONRAIL SHARED ASSETS; CSX                  )
CORPORATION; CSX TRANSPORTATION,            )
INC; NORFOLK SOUTHERN                       )
CORPORATION; and NORFOLK                    )
SOUTHERN RAILWAY COMPANY,                   )
                                            )
                                            )
                              Defendant.    )

## NOTICE OF REMOVAL

AND NOW, Come the Defendants, CSX Corporation, CSX Transportation, Inc.,

Consolidated Rail Corporation, inaccurately identified as "Conrail Shared Assets," and Conrail,

Inc., by and through their attorneys, Dickie, McCamey & Chilcote, P.C., and pursuant to 28

U.S.C. §§ 1441 *et seq.*, set forth the following in support of this Notice of Removal of the above-

captioned action to the United States District Court for the Eastern District of Pennsylvania:

### Plaintiff's State Court Action

1.      A civil action sounding in negligence and styled *Azriel Weaver v. Conrail, Inc.;*

*Consolidated Rail Corporation, d/b/a Conrail; Conrail Shared Assets; CSX Corporation; CSX*

*Transportation, Inc.; Norfolk Southern Corporation; and Norfolk Southern Railway Company,*

*Defendants*, was commenced by Complaint filed on or about August 14, 2009 in the Court of

Common Pleas of Philadelphia County, Pennsylvania, at No. 1720 of the August 2009 term. A

true and correct copy of Plaintiff's Complaint in such action is appended hereto as Exhibit A.

2.      Per Plaintiff's Complaint, this action arises from an accident which is alleged to

have occurred during the early afternoon hours of May 16, 2009, in Erie, Pennsylvania,

specifically on or along railroad tracks which parallel Lake Erie's shoreline from a distance of approximately one mile southeast of such shoreline, and which intersect Chestnut Street in Downtown Erie. (Pl.'s Compl. at ¶¶ 32, 34, 44.)

3.     In her Complaint, Plaintiff states that "[i]t is believed and therefore averred that the aforementioned railroad tracks are owned, operated, maintained and controlled by the Defendants in this action"; however, the railroad tracks identified or otherwise referenced in Plaintiff's pleading are owned, operated, maintained and controlled only by Defendant, CSX Transportation, Inc.  Appended hereto as Exhibit B, and incorporated by reference herein, are true and correct copies of those deed and merger documents evidencing CSX Transportation, Inc.'s acquisition and ownership of the railroad tracks identified or otherwise referenced in Plaintiff's Complaint; appended hereto as Exhibit C, and incorporated by reference herein, is a true and correct copy of that affidavit evidencing CSX Transportation, Inc.'s operation, maintenance and control of such tracks.

4.     Also in her Complaint, Plaintiff seeks to assert two negligence-based counts, the first of which is entitled "Negligent Maintenance of Railroad Facilities" and is maintained against all Defendants, and the second of which is entitled "Negligent Maintenance and Operation of Rail Vehicles" and is maintained solely against CSX Corporation and CSX Transportation, Inc.

5.     Plaintiff's Complaint was served upon CSX Corporation and CSX Transportation, Inc. on November 2, 2009.  Consolidated Rail Corporation and Conrail, Inc. were were served with such original process on November 4, 2009, as were Norfolk Southern Corporation and Norfolk Southern Railway Company; "Conrail Shared Assets" cannot be served with original process as such is not a person or entity, but rather, a description of an operating territory.  A true

and correct copy of the state court's docket entries reflecting the dates of service of original process is appended hereto as Exhibit D.

## Bases for Removal Per 28 U.S.C. §§ 1441 *et seq.*

6.    This Notice of Removal is filed within thirty (30) days from the November 2, 2009 date of service of Plaintiff's Complaint upon CSX Corporation and CSX Transportation, Inc., which constituted the initial pleading setting forth the claim for relief upon which Plaintiff's action against Defendants is based.

7.    It is believed that this action concerns a matter in controversy exceeding the sum or value of $75,000.00, exclusive of interest and costs.

8.    All Defendants consent, agree to and join in the removal of this action from the Court of Common Pleas of Philadelphia County, Pennsylvania, to the United States District Court for the Eastern District of Pennsylvania.  Appended hereto as Exhibit E is the Stipulation of Counsel for Norfolk Southern Corporation and Norfolk Southern Railway Company providing that these Defendants so consent, agree to and join in such removal of this action.

9.    This action may be removed to this Court pursuant to 28 U.S.C. §§ 1441 *et seq.* given the above and as there is complete diversity of citizenship between Plaintiff and those Defendants which were not fraudulently joined as parties to this action.  Specifically, Plaintiff, Azriel Weaver, is a citizen of the Commonwealth of Pennsylvania; Defendants, CSX Corporation and CSX Transportation, Inc., are both citizens of Virginia and Florida, having been formed under the laws of the Commonwealth of Virginia and having their respective principal places of business situated in the State of Florida; and Defendants, Norfolk Southern Corporation and Norfolk Southern Railway Company, are both citizens of Virginia, having been formed

3

under the laws of and having their respective principal places of business situated in the Commonwealth of Virginia.

10.    The citizenship of the remaining Defendants, Consolidated Rail Corporation, and Conrail, Inc., is to be disregarded for diversity jurisdiction purposes as there is no reasonable basis in fact or colorable ground supporting Plaintiff's "Negligent Maintenance of Railroad Facilities" against these Defendants.  Specifically, neither of these Defendants owns, operates, maintains or controls those railroad tracks identified or otherwise referenced in Plaintiff's Complaint as paralleling Lake Erie's shoreline from a distance of approximately one mile southeast of such shoreline, and which intersect Chestnut Street in Downtown Erie.  Rather, Consolidated Rail Corporation serves as a local carrier and switching company only within the shared asset areas of Detroit, Michigan, Northern New Jersey and Southern New Jersey/Philadelphia, Pennsylvania—not Erie, Pennsylvania—and Conrail, Inc. is the parent of Consolidated Rail Corporation, which likewise does not own or operate rail lines in Erie, Pennsylvania; further, "Conrail Shared Assets" is not an entity, but rather, is the description of the three areas in which Consolidated Rail Corporation operates.

11.    Thus, this action is one of which the District Courts of the United States possess original jurisdiction under 28 U.S.C. § 1332:  there exists complete diversity of citizenship between Plaintiff and each Defendant not fraudulently joined to this action, the matter in controversy is believed to exceed the sum or value of $75,000.00, exclusive of interests and costs, and all Defendants consent, agree to and join in the removal of this action.

12.    Written notice of the filing of this Notice of Removal will be promptly served upon counsel for Plaintiff after filing of the Notice with the United States District Court for the Eastern District of Pennsylvania, as required by law.  Additionally, a true and correct copy of

this Notice of Removal will be filed with the Prothonotary of the Court of Common Pleas of Philadelphia County, Pennsylvania, promptly after the filing of the Notice with United States District Court for the Eastern District of Pennsylvania, as required by law.

13.     By filing this Notice of Removal, Defendants, and each of them, do not waive any defense which may be available to any or all in this action.

WHEREFORE, Defendants, CSX Corporation, CSX Transportation, Inc., Consolidated Rail Corporation, inaccurately identified as "Conrail Shared Assets," and Conrail, Inc., respectfully request that this Honorable Court assume subject matter jurisdiction over this action on the diversity jurisdiction grounds set forth in this Notice of Removal.

Respectfully submitted by,

DICKIE, McCAMEY & CHILCOTE, P.C.

/s/ John E. Wall
John Edward Wall, Esquire
Pa. I.D. #17405
Tele. No.: (412) 392-5256
Email: jwall@dmclaw.com

Two PPG Place – Suite 400
Pittsburgh, PA 15222
Main Tele. No.: (412) 281-7272
Fax. No.: (412) 392-5367

Attorneys for Defendants, CSX Corporation, CSX Transportation, Inc., Consolidated Rail Corporation, inaccurately identified as "Conrail Shared Assets," and Conrail, Inc.

## CERTIFICATE OF SERVICE

I, John E. Wall, Esquire, hereby certify that true and correct copies of the foregoing have been served this <u>23rd</u> day of November, 2009, by U.S. first-class mail, postage pre-paid, to counsel of record listed below:

Thomas A. Lynam, III, Esquire
VILLARI, LENTZ & LYNAM, LLC
1600 Market Street, Suite 1800
Philadelphia, PA 19103
**<u>Counsel for Plaintiff</u>**

DICKIE, McCAMEY & CHILCOTE, P.C.

By <u>/s/ John E. Wall</u>
    John E. Wall, Esquire

Attorneys for Defendants, CSX Corporation
and CSX Transportation, Inc.